UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )
)
Plaintiff, )
)
and ) No. 4:05-CV-00778 CEJ
)
CHRISTOPHER HEMAN, )
)
Plaintiff-Intervenor, )
)
)
vs. )
)
DAIMLERCHRYSLER CORPORATION, )
)
Defendant. )

**MEMORANDUM AND ORDER**

Plaintiff Equal Employment Opportunity Commission (EEOC) and plaintiff-intervenor Christopher Heman bring this action against defendant DaimlerChrysler Corporation, pursuant the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et. seq. Heman alleges that defendant failed to accommodate his disability. DaimlerChrysler moves for summary judgment, pursuant to Rule 56, Fed.R.Civ.P. Heman and the EEOC oppose the motion, and the issues are fully briefed.

**I. Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Citrate, 477 U.S. 317, 322 (1986).

**II. Background**

Heman began working at the DaimlerChrysler facility in Fenton, Missouri, in 1984. In the ensuing years, he performed a variety of jobs, including wheelhouse buildup, strut tower buildup, and kickboard buildup. On August 28, 1997, Heman had just finished a shift working the kickboard buildup job when a co-worker ran over

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

his right foot with a forklift truck. Heman's foot was crushed in the accident, and he underwent emergency surgery. Two of his toes were amputated and a third toe is permanently bent. Heman also lost the flesh on the ball of his foot; as a result he has no padding or cushioning in this area, a condition he describes as "skin on bone."

Heman remained on medical leave until November 1998 when DaimlerChrysler cleared him to return to work, with the medical restriction of no standing for 75 percent of the day. Thereafter, Heman, his union representative and the defendant engaged in discussions about the availability of jobs that were consistent with Heman's seniority and work restriction. Heman did not resume working until June 1999. He was assigned to work as a starter wire harness installer, a job that could be performed while seated in a chair and for which he required no accommodation.

Heman contends that during late 2000 and early 2001, the starter wire installer job requirements began to change. New elements of the job required him to stand up every forty-two seconds to insert a clip on the top of the engine. Plaintiff testified this repetitive standing put pressure on the metatarsal bones of his right foot and was painful.

The changes to the starter wire installer job were consistent with a plant-wide workforce reduction program. Between late 2000 and April 2001, defendant sent safety inspectors and a union inspector to test the starter wire installer job requirements for compliance with "specification guidelines." In early 2001, Heman

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and defendant discussed several specific accommodations. Those included: a hydraulic-lift chair that would obviate Heman's need to stand, an oven to warm the starter wires, and transferring the task of tightening the starter nut to another employee who used an electric wrench.

Heman was on medical leave between April and October 2001 following a car accident. He testified in his deposition that when he returned to work, he found that further changes had been made to the starter wire installer job. As a result, he could no longer perform the job without experiencing significant pain. On October 17, 2001, defendant placed Heman on layoff because there was no work available within his seniority and medical restrictions.

On several occasions between October 2001 and September 2004, Heman returned to the plant for evaluations by the defendant's medical personnel. After each evaluation, defendant determined there were no jobs available within Heman's medical restriction of no standing 75 percent of the time. On September 8, 2004, Heman, along with his union representative and several of defendant's employees, toured the plant floor to observe jobs and discuss possible accommodations for Heman. On September 15, 2004, the same group again toured the shop floor, and Heman identified the fork truck driver job as one he could perform with or without accommodation.

Heman returned to work at DaimlerChrysler as a fork truck driver on September 20, 2004. On October 10, 2004, he was severely

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

injured in an automobile accident. He was on medical leave following the accident until September 2005.

On September 9, 2005, a plant doctor examined Heman and found that he could not stand for an eight-hour shift, he could occasionally bend/twist and squat, and he could lift 11-20 pounds. In October 2005, the plant physician determined that Heman's medical restrictions would continue permanently. The company's medical records reflect Heman's complaints of pain when standing or walking related to the loss of the metatarsal pad on his right foot. On December 1, 2005, the physician noted that Heman could work "in sit down capacity," but that he "should not be bending over."

In his deposition, Heman testified that he has taken a variety of prescription pain medications since the 1997 accident, he wears orthotic devices in both shoes, and he follows a pain management routine that includes desensitization therapy and massage therapy. Nevertheless, he never experiences complete relief from the pain. He testified that he can stand only for a few minutes at a time without experiencing severe pain; he felt that thirty minutes would be the total amount of time that he could be on his feet in a given day. Heman walks short distances, such as from one room to another, without assistance. He uses an electric wheelchair or motorized cart for grocery shopping or walking his dog; he has made brief trips to a convenience store without these devices. Heman testified that he performs household tasks (*i.e.*, folding laundry

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and balancing the checkbook) while seated; he also sits while fishing and he hunts from a car with a stationary crossbow.

## III. Discussion

The Americans with Disabilities Act (ADA) requires employers to provide "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A) (2006). Whether a disability exists is an individualized inquiry. Toyota Manufacturing Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002).

To obtain relief under the ADA, a plaintiff must show he (1) has a disability within the meaning of the ADA, (2) is a "qualified individual" under the ADA, and (3) "suffered an adverse employment action as a result of the disability." Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (citation omitted).

When a plaintiff claims his employer has failed to make reasonable accommodation for his disability, the Court applies a modified burden-shifting analysis.[1] Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995). Under that modified approach, a plaintiff "at all times retains the burden of

---

[1] If a party alleges a claim of discriminatory disparate treatment, the Court applies the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

persuading the trier of fact that he has been the victim of illegal discrimination due to his disability." Fenney, 327 F.3d at 712.

The ADA defines a disability as "a physical . . . impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2) (2006). Physical impairments include "cosmetic disfigurement" or "anatomical loss" affecting the musculoskeletal system. 29 C.F.R. § 1630.2(h)(1) (2006). A person is substantially limited if a long-term or permanent impairment prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004) (emphasis omitted); see also Toyota, 534 U.S. at 197.[2] The factors to be considered when determining whether an individual is substantially limited in a major life activity are: (i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment, and (iii) the permanent or long term impact . . . of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); see also Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2002). An assessment of whether a plaintiff is substantially limited in a major life activity must consider the effects of mitigating devices. Sutton v. United Air

---

[2] The Eighth Circuit does not use the test employed by the EEOC. Kammueller, 383 F.3d at 784, n. 2. Under the EEOC test, a person is "substantially limited" if, compared to an "average person in the general population," he cannot perform or is "significantly restricted as to the condition, manner, or duration under which" he "can perform a particular major life activity." 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Lines, Inc., 527 U.S. 471, 482 (1999); see also Equal Employment Opportunity Commission v. Sears, Roebuck & Co., 233 F.3d 432, 439 (7th Cir. 2000).

To be a "qualified individual," the employee must possess "the requisite skill, education, experience, and training for his position" and must "be able to perform the essential job functions, with or without accommodation." Fenney, 327 F.3d at 712. "An essential function 'means the fundamental job duties of the employment position'" and does not include "marginal functions of the position." Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894, 900 (8th Cir. 2006), citing 29 C.F.R. §1630.2(n)(1). Evidence of an essential function includes the employer's judgment as to which functions are essential, written job descriptions, the amount of time spent on the job performing the function, and the consequences of not requiring the incumbent to perform the function, among other factors. Id.; see also Heaser v. Toro Co., 247 F.3d 826, 830 (8th Cir. 2001).

If the employer disputes that the employee can perform the essential functions of the job, the burden shifts to the employer to provide evidence of those essential functions. Fenney, 327 F.3d at 712. If the employee cannot perform the essential functions of the job without accommodation, the employee must make a facial showing that an accommodation is possible. Id. The burden of production then shifts to the employer to show it is unable to accommodate the employee. Id. If the employer carries that burden, the employee must then present evidence of his individual

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

capabilities. Id. At that point, the "employee's burden merges with his ultimate burden of persuading the trier of fact that he has suffered unlawful discrimination." Id.

An adverse employment action is "one that causes a material change in the terms or conditions of employment." Fenney, 327 F.3d at 716 (citations omitted). To be adverse, the action need not rise to the level of termination or a reduction of benefits or pay, but "not everything that makes an employee unhappy is an actionable adverse action." Id. (citations omitted).

Under ADA regulations, to determine the appropriate reasonable accommodation, an employer may need to "initiate an informal interactive process" with a disabled employee in need of accommodation. Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 951 (8th Cir. 1999), citing 29 C.F.R. § 1630.2(*o*)(3). This interactive process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Id. To establish an employer failed to engage in the interactive process, a plaintiff "must show (1) he was disabled, (2) he requested accommodations, (3) [the employer] did not assist him in seeking accommodations, and (4) he could have been reasonably accommodated but for [the employer's] lack of good faith." Canny, 439 F.3d at 902 (citations omitted).

**A. Whether plaintiff is disabled**

It is undisputed that Heman has continued to experience pain in his right foot since the 1997 accident, and that the pain

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

becomes excruciating when he is on his feet for longer than a few minutes at a time. It is also undisputed that Heman’s foot pain affects his ability to engage in the major life activities of standing and walking. However, defendant argues that the foot pain Heman experiences does not substantially limit these major life activities and, therefore, Heman is not disabled within the meaning of the ADA. Specifically, defendant argues that the evidence of Heman’s ability “to stand, walk, shop for groceries, do laundry, care for his pet, hunt, fish, drive a car, shower, groom himself, and run errands” belies any claim of a substantial limitation.

In Toyota, 534 U.S. 184, the Supreme Court wrote that “to be substantially limited in [the major life activity of] performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people’s daily lives. The impairment’s impact must also be permanent or long term.” Id. at 198. The Court ruled that the trial court erred when it considered how an impairment affected manual tasks associated with a particular job. Id. The proper inquiry was how the impairment affected manual tasks of central importance to people’s daily lives. Id.

Here, defendant emphasizes that Heman ultimately is able to perform the manual tasks, albeit with some pain. Heman emphasizes the limitation resulting from the pain he experiences when performing the task. Because determination of this dispute would

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

require weighing the evidence, this matter is not appropriate for summary judgment.

Defendant also argues that the recent decision in Didier v. Schwan Food Co., 2006 WL 2934290 (8th Cir. 2006) is dispositive of the claims asserted here. The Eighth Circuit in Didier found that the plaintiff had failed to show the required nexus between his claimed disability and his requested accommodation. Here, Heman claims that he is substantially limited in the major life activities of standing and walking, and he has asked that the defendant accommodate his disability by re-assigning him to a fork truck driver position, a job that requires minimal standing and walking. Thus, unlike the plaintiff in Didier, Heman has demonstrated the required nexus between his claimed disability and his requested accommodation.

The instant case more closely resembles Fenney, 327 F.3d 707, *supra*, which was also discussed in Didier. The plaintiff in Fenney was able to bathe, shave, prepare a meal, dress, etc., but he required more time than the average person to do so. Thus, he requested that his employer accommodate him by giving him longer notice as to when he would be called in to work. Id. Like the plaintiff in Fenney, Heman is able to stand and walk, but only for a few minutes at a time before the pain becomes excruciating. He has requested the job of fork truck driver, which he says would not require him to stand and walk for extended periods of time.

The Court concludes that a genuine issue of fact exists as to whether Heman's impairment severely restricts his ability to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

perform activities of central importance to most people's daily lives — in this case, standing and walking.

   **B.   Whether plaintiff is a qualified individual**

Defendant argues that even if Heman is disabled, he is not a qualified individual within the meaning of the ADA because he could not perform the essential functions of the fork truck job with or without accommodation. Defendant presents evidence stating that Heman was responsible for 37 minutes of production downtime on October 7, 2004, when he was driving the fork truck. Apart from Heman's deposition testimony describing the fork truck job, defendant presents no other evidence of the job's essential functions.

Heman claims that he is able to perform the fork truck job because the truck uses hand levers and he can push the pedals with his left foot. He argues that there were causes for the production interruption on October 7, 2004 unrelated to his performance.[3] He also submits records showing that employees with less seniority than he have performed the fork truck job since 2001. The Court concludes that there is a genuine issue of material fact as to

---

[3] Defendant argues that the relevant inquiry is not whether Heman was in fact performing the fork truck job adequately, but whether defendants *believed* his performance was inadequate. In support, they cite Scroggins v. University of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000). That case involved an accusation of retaliatory discharge, not failure to accommodate. Heman has not been discharged from employment at DaimlerChrysler, so the Court has no occasion to inquire whether the stated reason for the discharge was pretextual, the inquiry giving rise to the actual/perceived distinction.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

whether Heman was able to perform the essential functions of the fork truck job.

**C. Whether defendant engaged in the interactive process**

Defendant argues that it has engaged in a good-faith interactive process with Heman, and thus Heman cannot show that but for defendant's lack of good faith, he could have been reasonably accommodated. Defendant further argues that Heman has resisted the interactive process in bad faith, thus foreclosing any claim that he should have been accommodated.

The parties have presented evidence showing that at various times after Heman returned to work following the 1997 accident, they engaged in discussions about the jobs Heman could perform and any modifications that might be necessary to accommodate his medical restrictions. Evidence also shows that Heman made requests for accommodation and, specifically, a request to be returned to the fork truck job which he could perform within his physical limitations. On multiple occasions before filing this action, Heman submitted to evaluations by the company's medical department in an ongoing effort to identify work that was within his medical and seniority restrictions. Heman states that after filing suit in May 2005, he has hesitated to further pursue informal efforts at accommodation. Nevertheless, Heman states that he visited the plant in April 2006 and requested placement as a fork truck driver. Also, he appeared for a medical reevaluation on June 6, 2006; the plant doctor continued the existing medical restrictions.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Based on the present record, the Court concludes that a genuine issue of fact exists as to whether defendant engaged in the interactive process in good faith and whether Heman refused to engage in meaningful participation in the process.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant DaimlerChrysler Corporation for summary judgment [# 39] is **denied.**

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of November, 2006.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com